**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH OLLIE,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 12-67Erie** |
| | ) | |
| **v.** | ) | **District Judge Schwab** |
| | ) | |
| **TROOPER JAMES BROWN, et al,** | ) | **Magistrate Judge Baxter** |
| **Defendants.** | ) | |

**MAGISTRATE JUDGE'S REPORTAND RECOMMENDATION**

# I.     RECOMMENDATION

It is respectfully recommended that the motion to dismiss filed by Defendant Brown [ECF No. 48] be GRANTED and the motion to dismiss filed by the Commonwealth Defendants [ECF No. 79] be GRANTED.

It is further recommended that the claims against Defendants Hart, Carniewski, and the City of Erie be dismissed pursuant to this Court's authority under the Prison Litigation Reform Act.

It is further recommended that the motion for leave to file amended complaint [ECF No. 52] be DENIED.

The Clerk of Courts should be directed to close this case.

# II.     REPORT

## A.  Relevant Procedural History

Plaintiff, acting *pro se*, filed this civil rights action on March 5, 2012.  In his Original Complaint, Plaintiff named Trooper James Brown, Attorney Eric Hackwelder, and Assistant

District Attorney Robert Sambroak[1] as Defendants. Plaintiff alleged that his constitutional rights were violated in numerous ways stemming from his arrest in November of 2011. Plaintiff complained that he was arrested without a warrant, that his vehicle was illegally stopped and searched, and that there are defects in the criminal complaint charging him with burglary.

Plaintiff has repeatedly attempted to amend his Original Complaint. See ECF Nos. 20, 21, 22, 32, and 43. By Order dated January 30, 2013, this Court directed that Plaintiff file a comprehensive complaint containing all claims he wished to pursue and naming all Defendants against whom he wished to proceed. The Order explained that "This complaint must contain all claims and all Defendants as it will be a stand-alone document and will replace every previously filed complaint. . . . This complaint will serve as the only operative pleading in this case and Plaintiff will not be granted further leave to amend without the showing of good cause." See ECF No. 45.

At this stage of the litigation, the Fifth Amended Complaint supersedes all other previously filed complaints and is the operative pleading in this case.[2] Plaintiff alleges that Defendants conducted an unlawful traffic stop that resulted in an unreasonable search and seizure and body pat down of Plaintiff. Defendants' actions resulted in false arrest, false imprisonment and confiscation of Plaintiff's personal property. ECF No. 47, page 4. Besides expanding upon the allegations of his Original Complaint, Plaintiff named eleven additional

[1] Defendants Hackwelder and Sambroak have previously been dismissed from this action. See ECF Nos. 44, 46.

[2] It is well settled that "an amended complaint supersedes the original version" and renders the original pleading ineffective. Atwell v. Lavan, 2005 WL 2234676, * 1 (M.D. Pa. Sept. 14, 2005). See also Snyder v. Pascack Valley Hosp., 303 F.3d 271, 276 (3d Cir. 2002) (recognizing that an "amended complaint supersedes the original version"); New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc., 101 F.3d 1492, 1504 (3d Cir. 1996) (an amended complaint generally supersedes -- or takes the place of -- the previously filed complaint); 6 Wright, et al., Federal Practice and Procedure, § 1476 (3d ed. 1998).

State Troopers as Defendants to this action.[3]  Plaintiff has also named Eugene Hart and

Stephanie Carniewski (victims of the burglary), as well as the "City of Erie, Pennsylvania, North

East Township Police Bureau" as Defendants.[4]  Id.

Trooper Brown filed a motion to dismiss (ECF No. 48) and Plaintiff filed an Opposition

thereto (ECF No. 53). The newly named Trooper Defendants filed a motion to dismiss (ECF No.

79) and Plaintiff filed Opposition briefs (ECF Nos. 81-82). Thereafter, Plaintiff filed a motion

for leave to file a Sixth Amended Complaint. ECF No. 52.[5]

Additionally, Plaintiff filed another Opposition brief which is entitled "Motion

Requesting the Court to Order the Defendant to file an Answer."  ECF No. 84. This document

was filed over twenty days late and Plaintiff did not seek leave of Court to file this additional

opposition brief.

The issues are fully briefed and this matter is ripe for disposition by this Court.


### B.  Standards of Review

#### 1)  *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards

than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520-521 (1972).  If

the court can reasonably read pleadings to state a valid claim on which the litigant could prevail,

it should do so despite failure to cite proper legal authority, confusion of legal theories, poor

---

[3]  The additional Trooper Defendants include: Noce, Lon Pierce, Presnar, Harvey, Sean Pierce, Vinkler, Dawdy, Forsythe, Garman, Podbielski, and Wargo.

[4]  Plaintiff has failed to properly serve Hart, Carniewski, and the City of Erie.

[5]  In the proposed Sixth Amended Complaint, Plaintiff seeks to add Charles Bowers, Chief of Police for the City of Erie, as well as Maria Lehman, Commissioner of the City of Erie Police Department. The proposed Sixth Amended Complaint omits Hart and Carniewski as Defendants.

syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### 2) Motion to dismiss pursuant to Rule 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906

(3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
>> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

<u>Burch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 221 (3d Cir. 2011) <u>quoting</u> <u>Santiago v.</u>

<u>Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010).[6]


   **C.  Relevant Factual History**

   Following a traffic stop based on reports of a burglary, Plaintiff was arrested without a

warrant on November 25, 2011.  Roxanne Roberts, a passenger in Plaintiff's van, gave a

statement with specific information regarding the burglary by Plaintiff and herself, as well as the

likely location of a stolen gun. A stolen Mossberg model 500 pump action shotgun was found on

the side of the road less than a mile away from the scene of the traffic stop and arrest consistent

with Roberts' statement.  Plaintiff was charged with Burglary, Theft by Unlawful Taking, and

Receiving Stolen Property, while Roxanne Roberts was charged with Conspiracy-Burglary and

---

[6]  Although the parties have attached several exhibits to their filings, the use of these exhibits by
this Court does not convert Defendants' motions to dismiss for failure to state a claim into
motions for summary judgment.  <u>Pryor v. National Collegiate Athletic Association</u>, 288 F.3d
548, 560 (3d Cir. 2002) ("...certain matters outside the body of the complaint itself, such as
exhibits attached to the complaint and facts of which the court will take judicial notice, will not
trigger the conversion of an Federal Rule of Civil Procedure 12(b)(6) motion to dismiss to an
Federal Rule of Civil Procedure 56 motion for summary judgment.").

Furthermore, as the Court explained in <u>Ickes v. Flanagan</u>, 2008 WL 859183, at *1 (W.D. Pa.),

> "in addition to the allegations contained in the pleadings, the Court may also
> review 'matters of public record, exhibits attached to the complaint and items
> appearing in the record of the case.' <u>Oshiver v. Levin, Fishbein, Sedran &</u>
> <u>Berman</u>, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994). Furthermore, in deciding a
> Rule 12(b)(6) motion, the Court may review 'indisputably authentic documents
> that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's
> claims are based on the document.' <u>Steinhardt Group v. Citicorp</u>, 126 F.3d 144,
> 145 (3d Cir. 1997).

<u>Id</u>.

Conspiracy-Theft. ECF No. 47, ¶¶ 50-51.[7]  The following day, State Troopers executed a search warrant on Plaintiff's van and recovered evidence from a second burglary.

The Counts of Plaintiff's Fifth Amended Complaint are:

| | |
|---|---|
| Count I | § 1983 – Arrest |
| Count II | § 1983 – Strip Search |
| Count III | § 1983 – Conspiracy |
| Count IV | § 1983 – Refusing or Neglecting to Prevent |
| Count V | Malicious Prosecution |
| Count VI | False Arrest and Imprisonment |
| Count VII | Victim-Witness False Information |
| Count VIII | § 1983 – Detention and Confinement |
| Count IX | Intentional Infliction of Emotional Distress |
| Count X | Negligence |
| Count XI | Negligent Infliction of Emotional Distress |

In the interests of clarity, Plaintiff's claims will be addressed *seriatim*.


**D.  Unconstitutional Arrest (Count I)**

Plaintiff claims that the arrest on November 25, 2011, was unconstitutional because it

---

[7] By federal Indictment dated April 10, 2012, Plaintiff was charged with Possession of a Firearm by a Convicted Felon, Possession of a Firearm while Subject to a Domestic Abuse Restraining Order, and Possession of a Stolen Firearm. See Criminal Action No. 12-18Erie. The events of November 25, 2011, and recovery of the Mossberg Model 500 shotgun form the basis of that criminal matter, which remains pending as of today's date. The state charges related to the events described in this civil action were *nolle prossed* at the request of Assistant United States Attorney Piccinini after the federal charges were filed. See ECF No. 23-1, page 27.

was "without reasonable grounds for [Officers Brown and Dawdy] to believe Ollie had committed an offense and Defendants knew they were without probable cause to arrest Ollie." ECF No. 47, Fifth Amended Complaint, ¶ 122. Additionally, Plaintiff alleges that "no complaint, information, or indictment was ever sworn against Ollie alleging offenses occurring prior to the moment Defendant Officer Forsythe handcuffed Ollie and told him he was under arrest." Id. at ¶ 123.

To state a claim for false arrest, a plaintiff must allege: "1) that there was an arrest; and 2) that the arrest was made without probable cause." Dennis v. City of Bridgeton, 2006 WL 3359712, at *2 (D.N.J. 2006).

A warrantless arrest of an individual in a public place for a felony is consistent with the Fourth Amendment[8] if the arrest is supported by probable cause. Maryland v. Pringle, 540 U.S. 366, 368 (2003) citing United States v. Watson, 423 U.S. 411, 424 (1976). "[P]robable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts[.]" Pringle, 540 U.S. at 371, quoting Illinois v. Gates, 462 U.S. 213, 232 (1983). The Supreme Court has explained that "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." Id. ("[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt").

To determine whether a law enforcement officer had probable cause to arrest, the district court must necessarily "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer,

---

[8] The Fourth Amendment only prohibits "unreasonable" searches and seizures. U.S. Const.Amend. IV.

amount to' probable cause[.]" <u>Pringle</u>, 540 U.S. at 371, <u>quoting</u> <u>Ornelas v. United States</u>, 517 U.S. 690, 696 (1996).

In this case, prior to the arrest of Plaintiff on November 25, 2011, the police knew the following:

> This incident occurred as Victim 1 was coming back to his residence on [address redacted] for lunch. As he drove by, he observed 1 [black male] and 1 [black female] walking up to his front porch and a white van parked in his second driveway approx. 40 yards away. He then continued on past the house and called his girlfriend, victim 2 on the phone. She was sleeping in the bedroom at the house and was awakened by the phone call. He asked "who are the two black people at the house"? [sic] Victim 2 then got up and walked out into the living room and observed one [black male] standing by the gun cabinet in the kitchen by the front door. He was reaching in and took a shotgun out and ran out the door after they noticed each other. Victim 2 was still on the phone with Victim 1 and she told him that they were stealing his guns. Victim 1 by now had gone down [redacted road name] eastbound and had reached the intersection on SR 426. He turned around and started coming back. Victim 2 ran out the front door of the house attempting to catch up with the two accused. She observed them take off in their white van heading east on [redacted road name] at a high rate of speed. Victim 1 was coming back towards the residence heading west on [redacted road name], when he observed the white van coming east on [redacted road name] and he attempted to block the road with his car and got out and tried to stop them. He again observed the [black male] and the [black female] in the vehicle with the [black male] driving. The accused were able to get around him and were fleeing at a high rate of speed. Victim 1 made chase and pursued the van and the two accused from [redacted road name] to SR 426 to Remington Road to SR 20 east to I90 at exit 45 and then I90 westbound until he saw this officer. He was able to obtain a PA registration plate [number redacted].

> On 11/25/11 at approx. 1105 hrs., this officer was running radar at mile marker 42.2 on I90 facing east bound traffic, when Victim 1 [redacted name] pulled over and came up to my patrol car. He stated that he was following a white van, PA registration [number redacted] with a black male and a black female heading westbound on I90 and that they had just been in his house and stole some of his guns. He stated he had just followed them from his house. This officer was called by station over the radio while I was talking to Victim 1. Victim 2 had just called PSP Erie to report the burglary. This officer quickly put out the vehicle description over the air to the other PSP cars in the area gave it to station. This officer had to turn around and made pursuit west on I90. This officer was unsuccessful in locating the vehicle on I90. PSP cars on SR 20 located the vehicles a short time later and made the arrest of the two actors and seized the vehicle.

<u>See</u> ECF No. 48-1, Pennsylvania State Police Reports, pages 1-4.[9]

Here, police officers had the description of the vehicle and its occupants along with the license number of the vehicle. The police officers had probable cause to stop the van and to arrest Plaintiff and his passenger because based upon the descriptions of burglars and their vehicle, along with the vehicle license number, there was "reasonable grounds for the belief of guilt."

Plaintiff has failed to state a claim at Count I and the motions to dismiss should be granted in this regard.


**E.  Unconstitutional Strip Search (Count II)**

Plaintiff alleges that the actions of the Trooper Defendants caused him to be subjected to a strip search by prison staff at the Erie County Prison.  ECF No. 47, ¶ 126. Importantly, Plaintiff does not allege that these Defendants **conducted** the allegedly unconstitutional strip search.

Liability under § 1983 requires a "personal involvement" in the deprivation of a constitutional right. <u>See</u> <u>Gould v. Wetzel</u>, 2013 WL 5697866, at *2 (3d Cir. Oct.21, 2013) <u>citing</u> <u>Argueta v. U.S. Immigration and Customs Enforcement</u>, 643 F.3d 60, 73 (3d Cir. 2011). An officer must be personally involved in the alleged misconduct.  <u>Rode v. Dellarciprete</u>, 845 F.2d 1958, 1207 (3d Cir. 1988).

Plaintiff has failed to state a claim against the Trooper Defendants at Count II because he has failed to allege that they conducted a strip search and the motions to dismiss should be granted in this regard.

_____

[9]  Here, the police reports are indisputably authentic documents. Both Plaintiff and the Commonwealth Defendants have attached the police reports to their various filings in this case. The Court's review of these documents in the legal analysis does not convert the motion to dismiss into a motion for summary judgment. <u>See</u> footnote 6.

## F. Conspiracy (Count III)

Plaintiff alleges that as a result of the conspiracy by Defendants, he was "deprived of both his liberty without due process of law and his right to Equal Protection of the laws, and the due course of justice was impeded." ECF No. 47, ¶ 128. Plaintiff cites to §§ 1983 and 1985[10] as the statutory authority for this claim.

In order to sufficiently allege a claim of a civil rights conspiracy, the complaint must specifically set forth: (1) the conduct that violated the plaintiff's rights; (2) the time and the place of the conduct; and (3) the identity of the officials responsible for the conduct. See Oatess v. Sobolevitch, 914 F.2d 428, 431 n.8 (3d Cir. 1990) citing Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988). Furthermore, the allegations of conspiracy must be grounded firmly in facts; they cannot be conclusory nor can they hinge on bare suspicions and foundationless speculation. See Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (affirming dismissal of conspiracy claims based upon mere suspicion and speculation).

Conspiracy claims must be pled with sufficient particularity to provide the defendants with fair notice of the claims against them. Loftus v. Southeastern Pa. Transp. Auth., 843 F.Supp. 981, 986 (E.D. Pa. 1994). "When a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action ... The pleadings standard is even stricter where the state officials allegedly involved in the

---

[10] Plaintiff fails to state a claim under 42 U.S.C. § 1985 as he does not make any allegation that Defendants entered into a conspiracy motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006).

conspiracy are immune from suit, as is the state court judge and prosecutor in the instant case."
Hunt v. Bennett, 17 F.3d 1263, 1268 (10th Cir.), cert. denied, 513 U.S. 832 (1994).

As pled, there is nothing in the Fifth Amended Complaint to factually support the elements of a conspiracy claim. See Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del.) quoting Phillips, 515 F.3d at 231 (at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief."). Instead, Plaintiff has made a foundationless allegation of conspiracy without setting forth any facts regarding the conduct, time, or place which constituted the conspiracy. Plaintiff's conclusory allegations do not present "any facts tending to show agreement [or] concerted action." Pleading a conspiracy requires more than mere semantics. Plaintiff's allegations are insufficient to state a conspiracy claim and therefore the motions to dismiss should be granted in this regard.

### G. "Refusing or Neglecting to Prevent" (Count IV)

At Count IV, Plaintiff alleges:

> Acting under color of law and pursuant to official policy or custom, Lon Pierce, John Doe, and the City of Erie knowingly, recklessly, or with gross negligence failed or refused to instruct, supervise, control, and discipline on a continuing basis Defendant police officers in their duties to refrain from:

> a) Unlawful and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

> b) Unlawful and maliciously arresting, imprisoning and prosecuting a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

> c) Conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States and the laws of the Commonwealth of Pennsylvania; and

d) Otherwise deprived Plaintiff of his constitutional and statutory rights, privileges, and immunities.

Defendants Brown and John Doe and the City of Erie had knowledge or, had they diligently exercised that duties to instruct, supervise, control, and discipline on a continuing basis, should have knowledge that the wrongs conspired to be done, as theretofore alleged, were about to be committed. Defendants Brown, Dawdy, Forsythe, Sgt. Noce, Vinkler, and John Doe and the City of Erie had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

Defendants Brown, Forsythe, Vinkler, Dawdy, Presnar, Wargo, Harvey, Lon Pierce, Garman, Podbielski and John Doe and the City of Erie directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendant Trooper officers heretofore described.

ECF No. 47, ¶¶ 130-33.

Although Plaintiff states that he is attempting to set forth a claim under § 1986,[11] his allegations actually read more along the lines of a municipal liability claim, and indeed, he does mention the City of Erie[12] as a Defendant here.

Generally, municipal liability under § 1983 "may not be proven under the *respondeat superior* doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) citing Monell, 436 U.S. 658. The Monell Court held:

---

[11] Liability under § 1986 is predicated on actual knowledge of a § 1985 violation. See Colon-Montanez v. Pennsylvania Healthcare Service Staffs, ___ Fed. App'x ___, 2013 WL 3481811, at *2 (3d Cir. June 27, 2013) citing Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994). As explained above, Plaintiff has failed to state a § 1985 violation, and so he has also failed to state a § 1986 violation.

[12] Plaintiff identifies the "City of Erie: as "a political subdivision of the State of Pennsylvania, for which Defendants Sgt. Noce, Brown, Dawdy, Forsythe, Vinkler, Garman, Podbielski, Wargo, Long Pierce, Presnar and Sean Pierce serve as Pennsylvania State Troopers, Sean Pierce, Terrance Dawdy, Gary Garman, Richard Podbielski and James Brown serve as dispatchers, and John Doe serves as Chief of Police." ECF No. 47, ¶ 19.

> Local governing bodies, therefore, can be sued directly under § 1983 … where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.... [Suit can also lie based on] deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.

Id. at 690–91. See also Los Angeles County, Cal. v. Humphries, ___ U.S. ___, ___, 131 S.Ct. 447, 452 (2010) ("The Court has also included the terms 'usage' and 'practice' as customs for which liability is appropriate.  The length of this list of types of municipal action leads us here to use a shorthand term 'policy or custom,' but when we do so, we mean to refer to the entire list.").

In Watson v. Abington Tp., 478 F.3d 144 (3d Cir. 2007), the Third Circuit described the ways in which a corporate liability claim can be established:

> Thus, there are two ways that a plaintiff can establish municipal liability under § 1983: policy or custom. Under Monell, a plaintiff shows that a policy existed "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Bielevicz, 815 F.2d at 850, quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990).  A plaintiff may establish a custom, on the other hand, "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Id. citing Andrews, 895 F.2d at 1480.   In other words, custom may be established by proving knowledge of, and acquiescence to, a practice.  Fletcher v. O'Donnell, 867 F.2d 791, 793-94 (3d Cir. 1989).

> It is clear under either route that "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom."  Bielevicz, 915 F.2d at 850, citing Andrews, 895 F.2d at 1480.

Id. at 155-56.

Here, Plaintiff alleges that the City of Erie is a "political subdivision of the State of Pennsylvania responsible for the training and supervision of" the Trooper Defendants.  ECF No. 47, ¶ 19.  Furthermore, "City of Erie, County, Pennsylvania, has established or delegated to Defendant John Doe [identified elsewhere as the City of Erie Police Chief] the responsibility for

establishing and implementing policies, practices, procedures, and customs used by law enforcement officers employed by City of Erie, County, of North East Township, Pennsylvania regarding traffic stops, arrests, and search and seizure." Id.

Plaintiff's allegation is based on a faulty factual premise as the City of Erie is not a subdivision of the State and does not control the Pennsylvania State Troopers. However, even if Plaintiff had named and served the correct government Defendant, he has not sufficiently set forth a viable Monell claim. Plaintiff has not alleged that any decisionmaker with authority over the troopers issued a specific proclamation or policy, nor has Plaintiff alleged that any decisionmaker had knowledge of and acquiescence in a specific custom. Accordingly, the motions to dismiss should be granted as to this Count.


### H. Malicious Prosecution (Count V)

Plaintiff alleges that Defendants instituted criminal process against him with malice and that the charges were not based upon probable cause. ECF No. 47, ¶ 135.

In order "[t]o prove malicious prosecution under section 1983, a plaintiff must show that: 1) the defendants initiated a criminal proceeding; 2) the criminal proceeding ended in plaintiff's favor; 3) the proceeding was initiated without probable cause; 4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and 5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." McKenna v. City of Philadelphia, 582 F.3d 447, 461 (3d Cir. 2009) citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).

The criminal proceeding arising out of this prosecution has not yet ended. Although Plaintiff was originally charged with a state crimes in the Erie County Court of Common Pleas,

those state charges were *nol prossed* after a federal indictment was brought. As of today's date, Criminal Action No. 12-18E (which relates to the events of November 25, 2011, and the recovery of the Mossberg Model 500 shotgun) remains pending. At that case number, Plaintiff is charged with Possession of a Firearm by a Convicted Felon, Possession of a Firearm while Subject to a Domestic Abuse Restraining Order, and Possession of a Stolen Firearm.

Plaintiff cannot make out the necessary elements of a malicious prosecution claim as the criminal proceeding has not ended in his favor (or ended at all). The motions to dismiss should be granted as to Count V.

## I. False Arrest[13] and False Imprisonment (Counts VI and VIII)

At Count VI, Plaintiff alleges:

> … (a) the Defendants acted with the intention of confining Ollie within fixed boundaries, (b) the act directly or indirectly resulted in confinement, and (c) Ollie was conscious of the confinement.

> Defendants Officer Brown, Cpl. Lon Pierce and Dawdy imposed by force or threats an unlawful restraint upon his freedom of movement, to wit by arresting and handcuffing his hands behind his back, transporting him to the North East Township, police station where he was questioned and detained in a cell.

> … Officer Brown and Officer Dawdy, by not sending his wallet, birth certificate, two cell-phones, photo-ID Driver License, house keys, silver bat, and personal papers to the court along with him, indirectly cause the unlawful imprisonment and consequential strip-searched Ollie in the Erie County Prison.

ECF No. 47, ¶ ¶ 141-43. At Count VIII[14], Plaintiff alleges that the Trooper Defendants deprived him "of both his right to his liberty without due process of law and his right to Equal Protection

---

[13]  The false arrest component of this Count has previously been addressed in Section D.

[14]  Plaintiff entitles Count VIII as "Detention and Confinement," (ECF No. 47, page 29), but this Court construes it as identical to the false imprisonment claim.

of the laws, and the due course of justice was impeded, in violation of the Fourth, Fifth, and Fourteenth Amendments[.]" Id. at ¶ 152.

To establish a claim for false imprisonment, Plaintiff is required to show that: 1) he was detained; and 2) the detention was unlawful. Gwynn v. City of Philadelphia, 719 F.3d 295, 304 n.4 (3d Cir. 2013) citing Renk v. City of Pittsburgh, 537 Pa. 68 (1994). See also Wallace v. Kato, 549 U.S. 384, 389 (2007) ("the sort of unlawful detention remediable by the tort of false imprisonment is detention with legal process.").

A false imprisonment claim under § 1983 which is based on an arrest made without probable cause is grounded in the Fourth Amendment's guarantee against unreasonable seizures. Groman v. Township of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995) (citations omitted). The general rule is that a seizure is unreasonable if the police lack probable cause. U.S. v. Davis, 726 F.3d 434, 439 (3d Cir. Aug. 9, 2013). As explained above, Defendants had probable cause to arrest Plaintiff. Accordingly, the motions to dismiss should be granted.


**J.  "Victim Witness False Information" (Count VII)**

At Count VII, Plaintiff alleges:

> Defendant Brown and the victims Eugene Hart and Stephanie Carniewski entered into a chain conspiracy in which each person was responsible for a distinct act within the overall plan, such as agreement to falsely allege that Eugene Hart had drive  [sic] past [sic] his home and seen two black people standing on his porch. All participants are interested in the overall scheme and are liable for all other participants' acts in furtherance of that scheme.

> Then under the color of state law, Officer Brown, and Officer Dawdy, as a result of their converted unlawful and malicious detention and confinement of Ollie, Defendants deprived Ollie of both his right to his liberty without due process of law and his right to Equal Protection of the laws, and the due course of justice was impeded, in violation of the Fourth, Fifth and Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. § 1983.

> As a direct and proximate result of the conduct of the Defendants, Ollie suffered harm and damages including but not limited to the aforesaid damages.
>
> Defendants City of Erie and John Doe are liable under the doctrine of respondent [sic] superior.

ECF No. 47, ¶¶ 147-150.

This Court construes this as a conspiracy claim and, as explained above, Plaintiff has failed to state a conspiracy claim. To the extent that Plaintiff claims that City of Erie and John Doe are liable for the acts of their subordinates, such an allegation does not comport with the law. Section 1983 liability cannot be predicated solely on *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action). When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991).

The motions to dismiss should be granted.

### K. State Law Negligence and Emotional Distress Claims (Counts IX – XI)

Plaintiff has asserted state law claims of negligence and infliction of emotional distress. However, as all of the federal claims should be dismissed, this Court should decline to exercise supplemental jurisdiction over the state law claims of negligence and infliction of emotional

distress.  See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("That power [of supplemental jurisdiction] need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent [or supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right.... Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well.").

### L.  Defendants Hart and Carniewski

Defendants Hart and Carniewski are the victims of a burglary who provided statements leading to Plaintiff's arrest.

In order to bring suit under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him of his constitutional rights.  Generally, anyone whose conduct is "fairly attributable to the state" can be sued as a state actor under § 1983. Filarsky v. Delia, ___ U.S. ___, ___, 132 S.Ct. 1657, 1661 (April 17, 2012) citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). "Action under color of state law requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Cirri v. Muroski, ___ F.3d ___, ___, 2013 WL 2897868, at *4 (3d Cir. June 13, 2013) quoting Harvey v. Plains Twp. Police Dept., 635 F.3d 606, 609 (3d Cir. 2011).  Private citizens, such as Hart and Carniewski, are not state actors under § 1983.

The claims against these Defendants should be dismissed from this action on this basis pursuant to this Court's authority under the Prison Litigation Reform Act.[15]

---

[15]  The PLRA allows the Court to dismiss certain claims *sua sponte*, under the following conditions:

**M. Defendant City of Erie**

Plaintiff's arrest was conducted by Pennsylvania State Troopers outside of the city limits of the City of Erie, and as explained above, the City of Erie does not have authority or control over the Pennsylvania State Troopers.

Accordingly, the claims against the City of Erie should be dismissed from this action on this basis pursuant to this Court's authority under the Prison Litigation Reform Act.

**N. Further Amendment of Complaint**

Plaintiff has filed a motion seeking leave to file a Sixth Amended Complaint. ECF No. 52.

The proposed Sixth Amended Complaint seeks to add additional Defendants (Charles Bowers and Maria Lehman) and raises several new claims not advanced in the Fifth Amended Complaint. The claims advanced therein are:

---

(b) Grounds for dismissal – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint – (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. Not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so. Nieves v. Dragovich, 1997 WL 698490, at *8 (E.D. Pa. 1997) ("Under provisions of the Prison Litigation Reform Act codified at 28 U.S.C. § § 1915A, 1915(e) and 42 U.S.C. § 1997e(c), the district courts are required, either on the motion of a party or *sua sponte*, to dismiss any claims made by an inmate that are frivolous or fail to state a claim upon which relief could be granted."). See also Keener v. Pennsylvania Bd. of Probation & Parole, 128 F.3d 143, 145 n.2 (3d Cir. 1997) (describing 28 U.S.C. § 1915(e)(2)(B) as "the PLRA provision mandating *sua sponte* dismissal of *in forma pauperis* actions that are frivolous or fail to state a claim."). In performing a court's mandated function of *sua sponte* reviewing a complaint under 28 U.S.C. § 1915(e) and under § 1915A to determine if it fails to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).

Count I – § 1983 based on search and seizure, due process, false arrest, false imprisonment, excessive use of force, and compensation for taking of property;

Count II – § 1983 based on failure to implement policies, customs and practices with regard to search and seizure and pointing of guns;

Count III – § 1983 based on excessive use of force;

Count IV – § 1983 based on false arrest;

Count V – § 1983 deprivation of property without due process of law;

Count VI – Municipal Torts Claim Act – false imprisonment;

Count VII – Municipal Torts Claim Act – negligence;

Count VIII – Municipal Torts Claim Act – negligent supervision;

Count IX  – Municipal Torts Claim Act – conspiracy;

Count X – Conversion; and

Count XI  – Assault.

ECF No. 52.

Federal Rule of Civil Procedure 15 states, in part, that "the court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(1)(B)(2).  "In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be freely given." Foman v. Davis, 371 U.S. 178, 182 (1962) (interpreting Federal Rules of Civil Procedure).  An amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted.  In re NAHC, Inc. Securities Litigation, 306 F.3d 1314, 1332 (3d Cir. 2002).

All of Plaintiff's claims based upon lack of probable cause (false arrest, false imprisonment, and search and seizure) are futile as explained herein. The factual bases of Plaintiff's other claims have been available to him since the time of his arrest in November of 2011, yet he advances no reason for the undue delay in bringing these claims to the Court. Plaintiff has been given several opportunities to amend his complaint and has been specifically admonished that the Fifth Amended Complaint must name all Defendants and advance all claims. While Plaintiff has been granted these opportunities to amend, several dispositive motions filed by Defendants have necessarily been dismissed as moot in order to allow the amendments.  Any further opportunity for Plaintiff to amend only delays this action, prejudicing current Defendants. Accordingly, no such amendment should be permitted.

## III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the motion to dismiss filed by Defendant Brown [ECF No. 48] be GRANTED and the motion to dismiss filed by the Commonwealth Defendants [ECF No. 79] be GRANTED.

It is further recommended that the claims against Defendants Hart, Carniewski, and the City of Erie be dismissed pursuant to this Court's authority under the Prison Litigation Reform Act.

It is further recommended that the motion for leave to file amended complaint [ECF No. 52] be DENIED.

The Clerk of Courts should be directed to close this case.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto.  See Fed.R.Civ.P. 72(b)(2).  Failure to file timely objections may constitute a waiver of appellate rights.  See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: November 4, 2013